## UNITED STATES *against* JOSEPH PORTER.

THIS was an indictment charging, " That before, on, and ever since the first day of *February* last, the public highway from the city of *New-York*, on the road through *Danbury*, *Litchfield*, and *Farmington*, and from thence to *Hartford*, by force of the several acts of the congress of the *United States* relating to post-offices and post-roads, was made, and still is, a post-road designated for the transportation of the public mails of the *United States*; and during all the period from and after the first day of *December*, in the year 1806, until the first day of *April*, in the year 1807, certain persons were, in virtue of the provisions of the said several acts of the said congress of the *United States*, authorized, employed and bound by contracts lawfully made by and with the post-master-general of the *United States*, to transport and carry the said public mails of the *United States* from the said city of *New-York* to the city of *Hartford*, and from thence back to said city of *New-York*, on the route through *Danbury*, *Litchfield*, and *Farmington*; that on the thirty-first day of *January* now last past, in a certain four-wheeled carriage, for that purpose provided, and drawn by four horses, they, the said persons so as aforesaid by the said postmaster-general authorized and employed, were, in compliance with and fulfilment of their said engagements, transporting a public mail of the *United States* from the city of *New-York* to said city of *Hartford*, one *Isaac Kellogg*, a mail carrier, lawfully employed, and sworn to a faithful discharge of his said duty as such, as the laws of the said *United States* require, then having the care and charge of the said mail, carriage and horses, so as aforesaid used and employed in the transportation of said public mail: that at *Farmington* aforesaid, on the 31st of *January*, and 1st

Where a party states a contract, which, from evidence exhibited on the trial, appears to have been in writing, he must either produce it, or show that it is not in his power to produce it; otherwise, no proof of its execution or contents will be received.

An allegation in an indictment, which is not impertinent or foreign to the cause, must be proved, though a prosecution for the same offence might be supported without such allegation.

of *February*, now last past, *Joseph Porter* of *Farming-
ton* aforesaid, being not ignorant of, but well knowing,
all the facts herein before stated, with intent unlawfully
and wilfully to obstruct, retard, hinder and stop the
passage of said public mail of the *United States*, then
and there, with force and arms, did seize and stop said
horses, and carriage in which said mail was then de-
posited; and with like force and arms, violence and
strong hand, did seize the said *Isaac Kellogg*, then having
the care and charge of said public mail, transported as
aforesaid, and then in the act of driving and guiding
said horses, and transporting said mail in the public
highway, and on said post-road, on the route aforesaid;
and said driver, horses and carriage, with said public
mail, did stop, and forcibly drag said mail-carrier from
said carriage, and then, at *Farmington* aforesaid, him
the said mail-carrier, with said public mail of the *United
States*, and horses and carriage used in transporting the
same, did knowingly and wilfully obstruct, stop, and de-
tain, for a long time, to wit, for the space of more than
fifteen hours; contrary to the form, force, and effect of
the act of the congress of the *United States*, in such
case made, and then in force, entitled *an act to esta-
blish the post-office of the United States.*" [*Stat. U. S.*
vol. 4. p. 505.]

The defendant pleaded *not guilty.*

The District Attorney offered a witness to prove the
contract with the postmaster-general for the transporta-
tion of the mail, stated in the indictment. He was
sworn, and was about to testify to the terms of the con-
tract, when

LIVINGSTON, J. inquired, if it was in writing?

The witness answered, yes.

*Daggett*, for the defendant, objected to any parol evidence of this contract, insisting that the writing itself ought to be produced.

The District Attorney said, it was in the hands of one *Ely*, of *New-York*, who refused to give it up; and we could not compel him to produce it.

LIVINGSTON, J. said, Mr. Attorney had shown, that it could be produced; he had named the person who had it, and stated where he lived. Mr. Attorney ought to have compelled *Ely* to attend, and produce the contract. Nothing is clearer than that proof of the contents of a writing cannot be received, unless it be shown that it could not be produced.

*Per Curiam.* The evidence offered is inadmissible.

*Wolcott*, for the prosecution. We shall take this ground, that the allegation in the indictment of a contract with the postmaster-general is mere surplusage; and, consequently, that no proof of it is necessary. The words of the statute are " That if any person shall knowingly and wilfully obstruct or retard the passage of the mail, or of any driver or carrier, or of any horse or carriage carrying the same, he shall, upon conviction, for every such offence, pay a fine," &c. [Section 3. *Stat. U. S.* vol. 4. p. 506.] That the mail should be carried in pursuance of a contract with the postmaster-general is a qualification not found in the statute. The mail is, in fact, carried on some of the most important routes in the *United States*, without any previous contract. It is so carried between *Baltimore* and *Philadelphia*, and between the city of *Washington* and *New-Orleans*. There cannot be a doubt, whether if the mail be obstructed on these routes, the penalty shall accrue. If we prove all that is necessary to subject the

defendant, there must be a verdict against him, whether other matters stated in the indictment be proved, or not.

*Daggett*, in reply. This allegation is not *impertinent* matter; it is, in no sense, *foreign* to the cause. The obstruction, contemplated by the statute, is of a mail carried by the direction, and under the authority, of the postmaster-general. The indictment sets forth the manner, in which such direction was given, in which such authority was derived. Now, though this allegation be *more particular* than it was necessary it should be, yet having been made, it must be proved. This is the rule even in civil cases. *Bristow* v. *Wright*, *Doug.* 665. It applies more strictly in criminal cases.

EDWARDS, J. was of opinion, that no prosecution for obstructing the passage of the mail could be supported, without showing a written contract with the postmaster-general.

LIVINGSTON, J. inclined to think, that an indictment might be so framed as to subject the defendant, without proof of a written contract; yet as this indictment states a contract, which is not impertinent or foreign to the cause, he was clearly of opinion that it ought to be proved. The court will be more strict, he added, in requiring proof of the matters alleged in a criminal than in a civil case.

The District Attorney rose, and said he would enter a *nolle prosequi.*

LIVINGSTON, J. observed, that the defendant was entitled to a verdict of acquittal, if he wished it.

The defendant's counsel said, he wished for a verdict.

September,
1808.

UNITED
STATES
v.
PORTER.

LIVINGSTON, J. then addressed the jury thus: No evidence at all being adduced against the defendant, it will be your duty, without leaving your seats, to find a verdict of *not guilty*.

The jury immediately found a verdict accordingly.

*The District Attorney* and *Wolcott*, for the prosecution.

*Goodrich, Daggett* and *Dwight*, for the defendant.